UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

UNITED STATES OF AMERICA,                :

        v.                                        :     Indictment No.
                                                   07 Crim. 866 (JSR)
                                         :
ANGEL PEREZ,
CARMEN PATRON, and                       :
MANUEL CONCEPCION,
   a/k/a/ "Santiago Figueroa,"           :

        Defendants.                       :

-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CARMEN PATRON'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

Stephanie M. Carvlin
Counsel for Carmen Patron
111 Broadway, Suite 701
New York, New York  10006
212-748-1636

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................1

STATEMENT OF FACTS.......................................................................................2

    The Investigation............................................................................................2

    The Warrant and the Search...........................................................................2

ARGUMENT

    POINT ONE

    THE AFFIDAVIT THAT WAS SUBMITTED IN SUPPORT OF THE WARRANT TO SEARCH MS. PATRON'S RESIDENCE WAS NOT SUFFICIENT TO ESTABLISH PROBABLE CAUSE..............................................................................................5

    Ms. Patron Has Standing to Contest the Search of Her Home..............................................................................................5

    Mr. Patron had a Reasonable Expectation of Privacy in Her Home..............................................................................................5

    The Affidavit Was Insufficient to Establish Probable Cause..............................................................................................7

    The Affidavit In Support of the Application.........................................7


POINT TWO

    MS. PATRON JOINS IN MOTIONS FILED BY HER CO-DEFENDANTS..................................................................................10

CONCLUSION........................................................................................11

# TABLE OF AUTHORITIES

## Statutes

21 U.S.C. §846..................................................................................................1

21 U.S.C. §841(a)(1).........................................................................................1

21 U.S.C. §841(b)(1)(B)....................................................................................1

## Cases

### Supreme Court

Illinois v. Gates,
　　462 U.S. 213 (1983)..................................................................................7

Minnesota v. Olson,
　　495 U.S. 91 (1990)

Rakas v. Illinois,
　　439 U.S. 128 (1978)....................................................................5, n1, 6

Rawlings v. Kentucky,
　　448 U.S. 98 (1980)....................................................................................5

United States v. Padilla,
　　508 U.S. 77 (1993)....................................................................................5

United States v. United States District Court,
　　407 U.S. 297 (1972)..................................................................................6

### Second Circuit

United States v. Diaz,
　　176 F.3d 52 (2d Cir. 1999)........................................................................7

United States v. Reed,
　　572 F.2d 412 (2d Cir. 1978)......................................................................6

United States v. Paulino,
　　850 F.2d 93 (2d Cir. 1988)........................................................................6

<u>United States v. Travisano</u>,
    724 F.2d 341 (2d Cir. 1983).................................................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,              :

      v.                                              :    Indictment No.
                                                    07 Crim. 866 (JSR)
                                                 :
ANGEL PEREZ,
CARMEN PATRON, and
MANUEL CONCEPCION,                     :
    a/k/a/ "Santiago Figueroa,"            :

           Defendants.                :

------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CARMEN PATRON'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

### PRELIMINARY STATEMENT

The indictment pending before this Court charges Carmen Patron and two co-defendants, Angel Perez and Manuel Concepcion, with conspiring to distribute more than 100 grams of heroin in violation of 21 U.S.C. §§841(a)(1), (b)(1)(B) and 846 and with distributing and possessing with intent to distribute more than 100 grams of heroin in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B).

This Memorandum of Law is respectfully submitted in support of Ms. Patron's motion to suppress physical evidence that was seized at her residence at 259 Jackson Avenue, Stratford, Connecticut on August 30, 2007, by local police officers and agents with the Drug Enforcement Administration.

## STATEMENT OF FACTS

### The Investigation

The arrest in this case resulted from an investigation that was conducted by a task force comprised of members of the Drug Enforcement Administration and the Stratford Connecticut Police Department. As part of the operation, an undercover agent working with the task force contacted Ms. Patron's co-defendant Angel Perez seeking to buy heroin. (Carvlin Affidavit at ¶¶6-9.) After the undercover made purchases of heroin from Mr. Perez, the agents applied for a warrant to search 259 Jackson Avenue in Stratford, Connecticut, which they characterized as his residence.

### The Warrant and the Search

In the affidavit in support of the warrant, the affiants, Stratford police officer William Jennings and DEA agent Ryan Mensing, described two transactions during which the undercover purchased heroin from Mr. Perez – one on August 1 and one on August 20, 2007. (Exhibit A at 2, 3.) On both occasions, Perez and the undercover initially met in person to negotiate aspects of the sales. During the August 1, 2007 deal, after Mr. Perez agreed to the price and quantity of the goods, he told the undercover that he had to go get the heroin. (Exhibit A at 2.) Later in the day, Mr. Perez called the undercover and arranged to meet again. The two met at another location and made the exchange. (Exhibit A at 2.)

Approximately, three weeks later, the men followed a similar pattern in conducting another transaction. As with the first sale, the two men got together

2

at a pre-arranged location in Connecticut to arrange the details of the deal. (Exhibit A at 3.) After the terms were settled, Perez and the undercover both left the first spot. Mr. Perez called about an hour later and told the undercover to meet him at another location, which purportedly was close to where Mr. Perez's supplier was. The undercover complied, and several hours later a deal was again conducted. (Exhibit A at 3.)

At the conclusion of both transactions when the deal was consummated, a surveillance team followed Mr. Perez. On both occasions he drove immediately to 259 Jackson Avenue in Stratford and entered the home. (Exhibit A at 2, 3.)

Eight days after the last deal mentioned in the warrant affidavit occurred, agent Mensing and officer Jennings applied for warrant to search 259 Jackson Avenue, Stratford, Connecticut. The affidavit both submitted in support of the warrant detailed the two transactions and the fact that Mr. Perez had driven to and entered 259 Jackson Avenue following both sales. The only other information that was included was the conclusory statement that Mr. Perez's residence had been "positively identified" as 259 Jackson Avenue. (Exhibit A at 2.)

On the same day the agents signed the affidavit – August 28, 2007 – the Connecticut Superior Court Judge who reviewed the affidavit issued the warrant. It was broadly worded, permitting the agents to seize

> Heroin, cutting agents, glassine envelope [sic], plastic baggies, strainers, scales, measuring devices, money and written records pertaining to the sale of narcotics, papers, photographs and keys showing occupancy, use and means of identification, telephone records, bank records and or safety deposit keys, weapons and handguns and electronic

> devices such as portable telephones and beepers used for communication of drug operations, computers used for record keeping practices of drug sales and cameras commonly used for the protection of drug trafficking operations and home made video tapes showing use and or sales of narcotics.

(Exhibit A at 5.)

Two days later – now ten days after the last transaction mentioned in the warrant application had occurred – officers with the Drug Enforcement Administration and the Stratford Connecticut Police Department executed the warrant. In so doing, they seized several cell phones, a computer memory stick, "brass knuckles/knife," a wallet, a prescription bottle, a plastic bag that contained "numerous small baggies (color red and color white baggies)," a police nightstick, two identifications, a gun magazine, "two mail items" and a small black box containing residue and a cut straw.

ARGUMENT

POINT ONE

THE AFFIDAVIT THAT WAS SUBMITTED IN SUPPORT OF THE WARRANT TO SEARCH MS. PATRON'S RESIDENCE WAS NOT SUFFICIENT TO ESTABLISH PROBABLE CAUSE

Ms. Patron Has Standing to Contest the Search of Her Home

The Fourth Amendment to the United States Constitution guarantees the people the right "to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." Not all unreasonable police intrusions, however, give rise to a basis for suppressing evidence. Fourth Amendment rights are personal and cannot be raised vicariously. United States v. Padilla, 508 U.S. 77, 81-82 (1993)(per curiam); Rawlings v. Kentucky, 448 U.S. 98 (1980)(defendant not permitted to contest the search of a female companion's purse that yielded drugs the defendant was subsequently charged with possessing). Therefore, to challenge a search or seizure, a defendant must establish that she has the requisite "standing"[1] -- that is, that his or her own Fourth Amendment rights were implicated. Here, Ms. Patron can satisfy this requirement.

Mr. Patron had a Reasonable Expectation of Privacy in Her Home

Ms. Patron has "standing" to challenge the search of her home. To meet this threshold, a defendant must demonstrate that she personally had a

---

[1] In Rakas v. Illinois, 439 U.S. 128, 139 (1978), the United States Supreme Court redefined its' previous analysis in this area, which focused on standing "as a theoretically separate" concept in favor of an approach that "forth-rightly focuses on the extent of a particular defendant's rights under the Fourth Amendment." The question to be answered following Rakas is whether the party seeking suppression herself has reasonable expectation of privacy that may have been infringed by governmental conduct.

"reasonable expectation of privacy" that was infringed by the search. <u>Rakas v. Illinois</u>, 439 U.S. 128, 139 (1978). This test is composed of two parts. First, the party seeking suppression must show that she had a subjective desire to keep the space that was invaded private and second, that the expectation of privacy is one that society accepts as reasonable. <u>United States v. Paulino</u>, 850 F.2d 93, 97 (2d Cir. 1988).

Both those requirements are met in this case. Ms. Patron's affidavit demonstrates that she had a subjective desire to maintain the privacy of her dwelling. She did not expose the contents of her home to public view. She did not consent to the police intrusion. Of course, it is beyond dispute that Ms. Patron's expectation that the privacy of her home would be protected from unreasonable police instruction is one that society recognizes as reasonable. The Fourth Amendment explicitly extends protection to "houses, papers and effects," and, as a result, the Fourth Amendment's protection against police intrusion operates with greatest force in the context of a police search of an individual's home. <u>See United States v. United States District Court</u>, 407 U.S. 297 (1972)(entry into the home is the chief evil against which the wording of the Fourth Amendment is directed."); <u>United States v. Reed</u>, 572 F.2d 412, 422 (2d Cir. 1978)("[O]ne's reasonable expectation of privacy in the home is entitled to a unique sensitivity from federal courts."). <u>See also Minnesota v. Olson</u>, 495 U.S. 91 (1990)(overnight guest in home has standing to object to his warrantless arrest).

### The Affidavit Was Insufficient to Establish Probable Cause

The principles that govern a court's determination of whether a search warrant application was sufficient to demonstrate probable cause are well-established. Under Illinois v. Gates, 462 U.S. 213, 230-232 (1983), "probable cause for a search warrant is established if the 'totality-of-the-circumstances' indicate a probability of criminal activity." United States v. Diaz, 176 F.3d 52, 110 (2d Cir. 1999). The inquiry is twofold: Is there probable cause to believe that criminal activity is occurring and is there probable cause to believe that evidence of the criminal activity will be found at the target location. It is this second prong of the probable-cause test that was not satisfied in this case.

### The Affidavit in Support of the Application

The affidavit submitted in support of the search warrant in this case established that Angel Perez twice sold heroin to an undercover police officer but did not demonstrate any basis for a belief that not evidence of that criminal activity would be found at 259 Jackson Avenue. Both transactions – the August 1 sale and the August 20 sale – took place at locations other than the Jackson Avenue home. Each sale was preceded by a meeting between the undercover and Mr. Perez in which the terms of the deal were firmed up. Each man then left the first spot – presumably so Perez could obtain the drugs and the undercover could obtain the money – and rendezvoused at another location later to consummate the sale. Neither of those negotiation meetings took place at Jackson Avenue.

There was no claim in the affidavit that Mr. Perez was storing the heroin he sold to the undercover in the Jackson Avenue home.[2] On the contrary, the affidavit gives rise to the opposite conclusion. Before each transaction could take place, Mr. Perez needed an opportunity to obtain the drugs from his supplier before the transaction could take place. In fact, on August 20, Mr. Perez told the undercover to go to a specific location to consummate the deal because Perez was "meeting the source in the area and that he would bring the heroin to the UC after meeting with his supplier." (Exhibit A at 3.) In other words, the affidavit demonstrated Perez did not have the heroin at Jackson Avenue or elsewhere. He had to obtain it to sell to the undercover.

Only one[3] "fact" recited in the affidavit even references the Jackson Avenue address: that after both transactions were concluded, Mr. Perez drove to and entered the location. While this is sufficient to connect Mr. Perez to the location, it is entirely inadequate to demonstrate that evidence of Mr. Perez's criminal activity would be found at the location.

"To establish probable cause to search a residence, two factual showings are necessary-first, that a crime was committed, and second, that there is

---

[2]The affidavit recites that a surveillance team followed Mr. Perez after each sale was completed. Both times Mr. Perez drove to 259 Jackson Avenue. Oddly, the affidavit is silent as to whether a surveillance team followed Mr. Perez after the negotiation meetings in which the terms of the sale were established. Yet, it was after those meetings that Mr. Perez went to obtain the heroin. In other words, did the surveillance team attempt to follow Mr. Perez to his source? Was that source found at some location other than 259 Jackson Avenue?

[3]The affidavit also states that 259 Jackson Avenue was Mr. Perez's home. However, the affidavit gives no basis for that conclusion. Because the affiants did not provide any support for this conclusion (check of DMV records, statement that Perez was routinely observed in the home overnight), the information – for whatever limited value it might have – must be disregarded. It is the issuing magistrate, not the police, who make the determination of whether probable cause exists. Thus, an affiant must provide the magistrate with the facts underlying any conclusion. See Coolidge v. New Hampshire, 403 U.S. 443 (1971)(Purpose of warrant requirement is to interpose an unbiased judicial officer into the probable cause determination).

probable cause to believe that evidence of such crime is located at the residence." <u>United States v. Travisano</u>, 724 F.2d 341, 345 (2d Cir. 1983). In this case, the affidavit that was submitted in support of the search warrant entirely failed to demonstrate the latter. The evidence that was seized from 259 Jackson Avenue must be suppressed.

## POINT TWO

## MS. PATRON JOINS IN MOTIONS FILED BY HER CO-DEFENDANTS

Ms. Patron requests permission to join in any motions made by her co-defendants that are relevant to her and that inure to her benefit.

CONCLUSION

For the above-stated reasons, and the reasons outlined in the accompanying affidavits and notice of motion, this Court should grant an order suppressing the evidence seized from Carmen Patron's home.

Dated: October 30, 2007

Respectfully submitted,

*Stephanie M. Carvlin*

TO: CLERK
United States District Court
Southern District of New York
500 Pearl Street
New York, New York   10007

HON. JED S. RAKOFF
United States Courthouse
Southern District of New York
40 Foley Square
New York, New York, 10007

MARISSA MOLÉ
Assistant United States Attorney
Office of the United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York   10007