LAW OFFICES OF

## STEPHANIE M. CARVLIN, ESQ.

111 Broadway, Suite 701
New York, New York   10006

STEPHANIE M. CARVLIN, ESQ.
BRYAN HA, ESQ.

OF COUNSEL                                           TELEPHONE: 212-748-1636
ALLAN P. HABER, ESQ.                          .      TELECOPIER: 212-374-1506
GEORGES G. LEDERMAN, ESQ.                            E-MAIL: CARVLIN@HOTMAIL.COM

June 9, 2008

Honorable Jed S. Rakoff
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York   10007

Re:   United States v. Perez, et al.
      07-CR-866-02 (JSR)

Dear Judge Rakoff:

        Carmen Patron, one of the defendants in the above-captioned case, is
scheduled to be sentenced by this Court on June 18, 2008. I write to provide
Your Honor with information that is relevant to your sentencing decision.

## BACKGROUND

        On September 12, 2007, Ms. Patron and two co-defendants were indicted
for conspiring to distribute and possess with intent to distribute more than 100
grams of heroin and with possessing more than 100 grams of heroin with intent
to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. On
February 28, 2008, Ms. Patron pled guilty to both counts without a benefit of plea
agreement. In a *Pimentel*[1] letter provided to defense counsel before Ms. Patron
entered her plea, the government outlined its view of Ms. Patron's likely
sentencing range under the United States Sentencing Guidelines ("U.S.S.G.") In
the government's view, the offense involved more than 100 but less than 400
grams of heroin, which yielded a base-offense level of 26. The government
believed that Ms. Patron was eligible for safety-valve relief pursuant to U.S.S.G.
§5C1.2 and therefore that the base-offense level should be reduced two levels.
U.S.S.G. 2D1.1(c)(9). Assuming that Ms. Patron adequately demonstrated

---

[1]*United States v. Pimentel*, 932 F.2d 1029 (2d Cir.1991).

acceptance of responsibility, the government predicted another three-point reduction and set the likely total offense level at 21. (Pre-sentence Investigation Report, hereinafter "PSR" at 4-5.) The government agreed that Ms. Patron appeared to fall into Criminal History Category (hereinafter "CHC") I. Her Guideline sentencing range of imprisonment therefore was 37-46 months.

## THE PROBATION REPORT

The United States Probation Office agrees with the government's Guideline calculations. (PSR at 8-9.) In addition, however, Probation has identified several additional "Factors To Be Considered In Imposing Sentence", including the following:

> Although Section 5H1.6 notes that "Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range," several factors suggest that the defendant's family circumstances are not ordinary. Section 5H1.4 "…Drug or Alcohol Dependence or Abuse" is also not ordinarily relevant in determining if a departure is warranted, but should be considered in this case."

(PSR at ¶79.) The PSR also cites Ms. Patron's sexual and physical abuse as a child as factors that "may have contributed to the life choices she has made…." (PSR at ¶80.) Probation recommends that this Court sentence Ms. Patron to time served and a four-year term of supervised release with the special condition of 12 months home confinement. (PSR at 20.)

## THE §3553(a) FACTORS

Following the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), and the Second Circuit's interpretation of *Booker* in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), this Court's sentencing decision must be governed by the factors listed in 18 U.S.C. §3553(a). Section 3553 requires a Court to impose a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment. Section 3553(a) directs the Court to consider various factors in determining how best to satisfy these goals: the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the Guidelines range and any applicable Guidelines Policy Statements, the need to avoid sentencing disparities and the need to provide restitution to the victims. Section 3553(a) requires this Court to consider all the factors reviewed above

2

and ultimately derive a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public and to provided the defendant with needed educational or vocational training, medical care or other correctional treatment. *See United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006) (analyzing the "parsimony clause" of 18 U.S.C. §3553(a)).

### 1.    The Guidelines Range and Policy Statements

While this Court is no longer bound to impose a Guidelines sentence, the Second Circuit has directed District Courts to "consider" the Guidelines, and in "order to fulfill this statutory duty to 'consider' the Guidelines, a sentencing judge will normally have to determine the applicable Guidelines range." *Crosby*, 397 F.3d at 111. Thus, one step in deciding what sentence is appropriate for Ms. Patron is to calculate the Guideline range for her offense. However, there is no presumption that the Guidelines provide the "correct" sentence, and this Court may vary from the Guidelines based entirely on the Court's view that the Guidelines range doesn't properly reflect the §3553(a) factors. *See Kimbrough v. United States*, --- U.S. ---, 128 S. Ct. 558, 575 (2007).

The *Pimentel* letter and the PSR both calculate Ms. Patron's offense level as 21 and her Criminal History Category as I. (PSR at ¶¶28, 38.) Ms. Patron has no objection to this determination. Her Guideline range for incarceration is 37 to 46 months. (PSR at ¶64.) However, because Ms. Patron is safety-valve eligible, she faces no mandatory minimum sentence.

### 2.    The Nature and Circumstances of the Offense

Admittedly narcotics-distribution charges are serious, as the high Guideline ranges and statutory minimums reflect. Ms. Patron acknowledges the serious nature of her conduct. However, the amount Ms. Patron pled guilty to distributing – between 100 and 400 grams of heroin – is comparatively small. Additionally, Ms. Patron did not possess any weapons or engage in any acts of violence. With her boyfriend, Ms. Patron, at the time herself a heroin addict, distributed relatively small amounts of heroin to support her own use of the drug.

**[REDACTED]**

**[REDACTED]**

3.    <u>**Ms. Patron's History and Characteristics**</u>

a.    <u>**Ms. Patron's Background**</u>

As the PSR indicates, Carmen Patron's upbringing was far from routine. She is the third of eleven children. (PSR at ¶39.) Carmen's father left the family when Carmen was very young. This had profound consequences, both economic and psychological. First, Carmen's mother was left alone to take care of the eleven children. As the eldest daughter, Carmen was expected to help. Rather than appreciating Carmen's efforts, her mother, undoubtedly overwhelmed by frustration and anger at her own impossible situation, regularly abused Carmen. She beat her with "wires, belts, sticks, pipes and whatever she could find…" (PSR at ¶41.) If Carmen didn't clean the house often enough or thoroughly enough, her mother would berate her. If dinner was late, or the rice Carmen cooked was burned, her mother would slap her. On more than one occasion, the beatings were so severe that Carmen had to stay home from school. Ultimately, her mother insisted that Carmen leave school in the ninth grade.

Home was far from a comforting environment for another reason. When she was 6 or 7 years old,  **[REDACTED]**

Ms. Patron experienced as a child are apparent: she began to use drugs at a very early age, and she developed an extreme concern for the safety and security of her own children.

b.    <u>**Ms. Patron's Drug Use and Post-Offense Rehabilitation**</u>

When she was arrested on the instant charges, Ms. Patron was a long-term drug user. As described in the PSR, Carmen has been plagued by low self-esteem throughout her life. She first started using marijuana at 21. She first used cocaine when she was 25. Unfortunately, Ms. Patron's use of powder cocaine led to crack use. She was addicted for more than two years.

During the years she was using cocaine and crack, Ms. Patron had a string of arrests for minor charges in Connecticut, primarily larceny in the 6th degree, a Class C misdemeanor under Connecticut law. Ultimately, Ms. Patron's daughter, Yaneisy, gave her an ultimatum: give up the crack or give up your

family. (PSR at ¶43.) Whenever a threat to her family has arisen, Ms. Patron has demonstrated a remarkable ability to rally her not inconsiderable personal strength. She stopped using crack cocaine "cold turkey." She remained drug-free for almost ten years.

Unfortunately, Ms. Patron fell down a flight of stairs in 1996. As a result, she suffered a disc injury. The pain was intense. Ms. Patron's treating physician prescribed OxyContin. (PSR at ¶49.) The medication awakened an old craving. Ms. Patron began to abuse the drug. When her physician caught on to the fact that Ms. Patron was addicted, he refused to prescribe any more pills and suggested that she go to a methadone treatment program. Ms. Patron took methadone on and off for several years. However, she continued to use drugs. In approximately 2003, she was introduced to heroin and began to use it regularly. (PSR at ¶48.)

Using heroin provided several perceived benefits to Ms. Patron. It helped reduce the physical pain caused by her back injury. It also dulled the pain of daily living. While Ms. Patron enjoyed being a mother, she remained plagued by feelings of sadness and insecurity. Heroin dulled some of these feelings, and she felt she could control her use of the drug somewhat, limiting it to times when her children weren't home or were asleep. Ms. Patron believed that her children were unaware that she was using drugs again, a supposition that was confirmed in Probation's interview with her daughter Yaneisy. (PSR at ¶43.)

Not long after she began to use heroin, Ms. Patron reconnected with co-defendant Angel Perez. She had known Mr. Perez when both were growing up in Bridgeport, Connecticut. The two began involved romantically. Soon they were snorting heroin together. Ms. Patron remained on methadone maintenance throughout much of this time. Thus, she often didn't experience a "high" from her use of heroin. Rather, she continued using heroin because she believed that it would bring her closer to her much-younger boyfriend, Mr. Perez.[2] Using heroin together formed much of the basis for their relationship. Of course, their drug habits led to the offense conduct. Ms. Patron, Mr. Perez and their supplier were arrested on August 30, 2007.

Ms. Patron's bail conditions required that two financial response parties sign a $150,000 bond. Her daughter Yaneisy Irizarry and a long-term friend did so. Ms. Patron was also ordered to undergo strict pre-trial supervision. Of course, the conditions of her release also required that she not use any illegal drugs. The United States Probation Office in Bridgeport, Connecticut, where Ms. Patron is being supervised, referred her to a program called Regional Counseling

---

[2]Ms. Patron in no way intends to shirk responsibility for her own actions. She chose to use heroin. Mr. Perez did not force her to do so. Indeed, she had started to use heroin before she and Mr. Perez became involved. However, through therapy Ms. Patron has also grown to realize that her low self-esteem and the concomitant need to be liked or loved or accepted has led her to make many poor choices.

Services. Through this group and her own extraordinary efforts, Ms. Patron has been entirely drug-free since her arrest, as the results of repeated drug tests demonstrate.

In a letter to this Court Robert McSally, a Counselor in Training at Regional Counseling Services, attests to Ms. Patron's hard work and the progress she had made in the past year:

> I have seen Ms. Patron grow in the group evident by her changing attitude towards recovery and her ability to open up and be honest within the group regarding her personal life issues. Ms. Patron has shown responsibility by attending group faithfully, being on time, and participating regularly. Since being in treatment Ms. Patron has began [sic] to establish a loving and caring relationship with her immediate family and this will serve as a support tool in her recovery and as a positive role model for her daughters.

(Robert McSally letter to March 8, 2008, to the Court, attached hereto as Exhibit A.) Mr. McSally believes that Ms. Patron's treatment has been effective and urges this Court to sentence Ms. Patron to probation:

> As a counselor at Regional Counseling Services I believe that Ms. Patron would benefit by being put on probation affording her the opportunity to remain in treatment and work toward recovery rather than to be incarcerated.

(Exhibit A.)

### c.    Ms. Patron's Family Circumstances

Ms. Patron has seven children. Three still reside with her: V. (age 18), J. (16) and D. (14). All three attend school. As the PSR makes clear, Ms. Patron is integral to her children's well-being. In an interview with the United States Probation Officer who prepared Ms. Patron's PSR, Ms. Patron's daughter Yaneisy, while acknowledging the pain that her mother's drug-addiction caused the family, also noted Ms. Patron's many, many good characteristics:

> Yaneisy informed that Patron is an instrumental piece of the family's infrastructure and they don't know what they would do without her. Yaneisy described Patron as a very good person who helps many less fortunate with regard to childcare, money and emotional support: "My mother gave us what we needed. She couldn't afford to give us what we wanted, but she kept us happy with the basics," Yaneisy

related. "We love her (Patron) to death. It's upsetting that she's going through this."

(PSR at ¶43.) In a letter to this Court, Yaneisy echoes these sentiments:

> I wanted to let you know that my mother is a truly good person. She is a wonderful grandmother to my children. She always lends a hand and takes care of them for me.
>
> My mother is very close to my children and to me. She always helps people in need, and has brought me up to be the same kind of person.

(February 27, 2008 letter of Yaneisy Irizarry to the Court, attached hereto as Exhibit B.)

### d.    Ms. Patron's Reputation in the Community

Several people have written to the Court on Ms. Patron's behalf to describe the woman they know. Their letters are consistent: they all describe Ms. Patron as a loving, generous, warm-hearted woman, who is a good mother to her own children and a good surrogate mother to their children. Mighalia Perez, a nurse's aide, describes Ms. Patron's parenting skills:

> She is the mother of 7 children whom she has always cared for and provided for her children, though she became a single parent she's done an outstanding job with her children at home residing are ages of 18, 16 & 14. Carmen is a grandmother of two ages 9 & 4.
>
> I have always been very impressed with how well Carmen has raised her children.
>
> She also has done for my children during my own financial crisis she bought food for my children and myself.

(Letter of Mighalia Perez to the Court, attached hereto as Exhibit C.)

Ms. Patron's friend Charmaine Pottinger, also notes Ms. Patron's incredible warmth and her love for children:

> I have known Carmen for the pass[3] 15 years. We watched each other kids. Carmen and I met in the area where we both lived. She is a fun loving person. She also is very warm

---

[3]In quoting from the letters submitted to the Court on Ms. Patron's behalf, I have retained the original grammar, spelling and punctuation.

> hearted. *** My children are my heart and Carmen is the only person I trust to watch them. She is honest, caring and a very efficient person. Please consider Carmen. She is a Super Mom to my kids and her kids as well. We all need her around to keep us laughing.

(Letter of Carmen Pottinger to the Court, attached hereto as Exhibit D.)

Gina Santiago, the daughter of a close friend of Ms. Patron, stresses Ms. Patron's generosity to others and her role she plays in the lives of her friend's children:

> I know Carmen by my mom that is her friend and I have to say she is a very loving and caring person she has helped us in a lot of ways, she will take the food out her mouth to give it to someone else. I remember when my uncle passed away Carmen was there for us. And she is a wonderfull mother and grandmother her kids are her life, I trust her with my kids. I can count on her. I will let my kids with her with no worry. And I know that my kids will be good taken care of she makes sure that my kids eat and are cleand. And my kids love being with her and is hard for my oldest son to stay with anyone. But as soon as I tell them that they are going to Auntie Carmen's house, they love it.

(Letter of Gina Santiago to the Court, attached hereto as Exhibit E.)

Ms. Patron's relatives agree with this assessment. Her sister Miriam Rojas, a school bus driver in Connecticut, describes Ms. Patron as a "loving" and "kind hearted" person who would "do anyone a favor even if it means going out of her way." Ms. Rojas also notes that Ms. Patron has "been like a second mother to many people, including [Ms. Rojas'] own son and [their] ten other siblings." (Letter of Miriam Rojas to the Court, attached hereto as Exhibit F.)

In a letter to this Court, one of Ms. Rojas's sons details the care he has received from Ms. Patron:

> Again, Carmen is a kind a caring person and I am greatful for having her in my life. She is like a second mother to me. She has done so much for me, in my time … of need. She has given me shelter, food and knowledge to help me move forward in life. Because of her, I went from being hungry and homeless to having a job and my own place where my kids could come and play. I am living a better life today and I thank her for being there for me.

(Letter of Emilio Rojas to the Court, attached hereto as Exhibit G.)

In short, those who know Ms. Patron best describe her as an honorable person who, in spite of the difficulties she has had in her own life, has consistently reached out to help others. She is a good mother, a good sister and a good friend.

### 4.    The Kinds of Sentences Available

Because she is safety-valve eligible, Ms. Patron does not face any mandatory minimum term of incarceration. The maximum sentence of incarceration provided for her offense is 40 years. Section 841(b)(1)(B) of Title 21 of the United States Code prohibits this Court from imposing a term of probation and mandates that the Court sentence Ms. Patron to a term of supervised release of at least four years if a term of incarceration is imposed.

### 5.    Unwarranted Sentence Disparities

Debate has existed in this Circuit (and others) over whether the reference to disparity in sentences in 18 U.S.C. §3553(a) means disparity within a case (between defendants in the same cases) or disparity between the defendant to be sentenced and all defendants who have been convicted of the same offense under similar circumstances. The Second Circuit now appears to have condoned a District Court's considering disparity among co-defendants in determining what constitutes a reasonable sentence. *United States v. Willis*, 476 F.3d 103, 110 (2d Cir. 2007)(District Court may consider disparities among co-defendants when imposing sentence); *United States v. Fernandez*, 443 F.3d 19, 32 n.9 (2d Cir. 2006)(plain language of §3553(a)(6) seems not to prohibit judges from considering disparities among co-defendants). In either case, however, the disparity to be avoided is "unwarranted" disparity.

Two other defendants in this case were charged by the government, Manuel Concepcion and Angel Perez. Mr. Concepcion has not yet been sentenced. Mr. Perez has been sentenced to a term of incarceration of 84 months. However, neither man was similarly situated to Ms. Patron. Mr. Concepcion was the supplier of the narcotics. Additionally, Mr. Perez and Mr. Concepcion both have prior felony convictions. Thus, sentencing Ms. Patron to a lesser sentence than her co-defendants received would not create an unwarranted sentencing disparity.

### THE APPROPRIATE SENTENCE

Section 3553(a) requires this Court to consider all the factors reviewed above and ultimately derive a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the

public and to provided the defendant with needed educational or vocational training, medical care or other correctional treatment. *See United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006) (analyzing the "parsimony clause" of 18 U.S.C. §3553(a)).

The United States Probation Office has concluded that under these standards, Ms. Patron should not be sentenced to a term of incarceration. Ms. Patron concurs and urges this Court to impose the sentence recommended by Probation: a four-year term of supervised release with a special condition of 12 months home confinement for the following reasons:

### The §3553(a) Factors That Weigh In Favor Of Imposing A Non-Guideline Sentence

- Ms. Patron demonstrated unusual acceptance of responsibility for her [REDACTED]

- [REDACTED]

- Ms. Patron's post-offense rehabilitation, as evidenced by her having not used any illegal substances since her arrest ten months ago, and her enthusiastic participation in her drug-treatment, makes it possible for her to live a law-abiding life in the future;

- Ms. Patron's family circumstances, while not providing the basis for a downward departure, do constitute grounds for imposing a non-guideline sentence. Her three children who live with her need her. She has been the mainstay of their lives. Ms. Patron, herself a victim of sexual abuse as a child, has been extremely protective of her children, spending substantial time with them. Her absence would create a grave conflict for the three children who reside with her. Admittedly, If Ms. Patron is sentenced to a term of incarceration, her daughter Yaneisy would take care of her three siblings (Yaneisy "noted that she will do whatever it takes to keep [her siblings] together as she does not want them to enter the "system" (child protective services)." PSR at ¶43.) However, Yaneisy, herself relies on Ms. Patron to watch her daughter while she (Yaneisy) is at work. PSR at ¶53. As the PSR notes, if Yaneisy were forced to take in her three siblings, the family would suffer.

- [REDACTED]

### The Goals of Sentencing

As Probation notes, all the goals of sentencing specified in 18 U.S.C. §3553(a) can be satisfied in this case without imposing a term of incarceration. Clearly, the Court need not sentence Ms. Patron to a term of incarceration to protect the public. This offense doesn't involve violence, the use of force or the possession or use of weapons. Additionally, given Ms. Patron's exemplary post-offense rehabilitation, there is no reason to conclude that she now poses a threat to the public in any way. She made a very grave error in becoming involved in the conduct that led to the instant charges. She deeply regrets having done so, not only because she was caught, but because her conduct in this case has placed her children at jeopardy.

Ms. Patron could benefit from educational and vocational training and medical care, but need not receive such assistance in a BOP facility. Indeed, if this Court imposes a term of supervised release, the United States Probation Office can work with Ms. Patron, as it has during her pre-trial release, to insure that she receive the assistance she needs.

This Court must also try to fashion a sentence that promotes respect for the law and deters others from committing similar offenses. Respect for the law would be promoted by showing leniency on an individual of Ms. Patron's background who, when given a chance, has begun to turn her life around in an admirable fashion.

The only factor that even arguably weighs in favor of sending Mr. Patron to prison is the need for the sentence imposed to provide general deterrence. It is respectfully submitted that a the four-year term of supervised release Probation recommends with a condition of 12 months home confinement, coupled with a requirement that Ms. Patron continued to attend drug-treatment as directed by Probation, would satisfy this goal.

### CONCLUSION

In the circumstances of this case, the goal of "just punishment" can best be satisfied by not imposing a term of incarceration. It is respectfully submitted that any term of incarceration would constitute a sentence that is greater than necessary to meet the goals delineated in 18 U.S.C. §3553(a). For all the reasons stated above and in the PSR, Ms. Patron respectfully requests that the Court impose the sentence recommended by the United States Probation Office.

Respectfully submitted,

Stephanie M. Carvlin
Counsel for Carmen Patron

cc: AUSA Marissa Molé

EXHIBIT A

# REGIONAL COUNSELING SERVICES

 *a division of Regional Network of Programs, Inc.*

**480 BOND STREET**
**BRIDGEPORT, CT 06610**
**(203) 366-5817 • FAX (203) 394-6790**

March 8, 2008

The Honorable Jeb S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, NY. 10007

I am writing this letter on behalf of Ms Carmen Patron. My name is Robert McSally, I am a counselor at Regional Counseling Services. I have observed and worked with Ms Patron in a intensive outpatient group for substance abuse rehabilitation for the past 6 months.

I have seen Ms. Patron grow in the group evident by her changing attitude towards recovery and her ability to open up and be honest within the group regarding her personal life issues. Ms. Patron has shown responsibility by attending group faithfully, being on time, and participating regularly. Since being in treatment Ms. Patron has began to establish a loving and caring relationship with her immediate family and this will serve as a support tool in her recovery and as a positive role model for her daughters.

As a counselor at Regional Counseling Services I believe that Ms. Patron would benefit by being put on probation affording her the opportunity to remain in treatment and work toward recovery rather than to be incarcerated.

If you need any further information or would like to speak to me directly you may do so by calling 203-366-5817. Thank you for considering my request on behalf of Ms. Patron.

Thank You

Robert McSally
Counselor in Training (CIT)

# EXHIBIT B

**Ya█neisy Irizarry**

█████, CT 06401

████████████

February 27, 2008

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10006

Dear Honorable Rakoff:

Thank you for allowing me the time to speak to you today. I am writing with reference to my mother Carmen Patron. She is before your court on charges.

I wanted to let you know that my mother is a truly good person. She is a wonderful grandmother to my children. She always lends a hand and takes care of them for me.

My mother is very close to my children and to me. She always helps people in need, and has brought me up to be the same kind of person.

I know my mom has been convicted of a very serious crime however I wanted you to know that she is a warm, caring and giving person who made a mistake.

Any consideration you can find for her would be so very much appreciated by her grandchildren and myself.

Thank you again for allowing me this time to speak to you.

Sincerely,

Yaneisy Irizarry

EXHIBIT C

The Honorable Fred S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

I'm a Nurse's Aide a Family Care
Visiting nurse, I assist to those
less fortunate with physical,
mental and emotional disabilities,
also senior citizens.
I've worked in this field for
over 7 yrs.
I have had the honor to be
a friend of Carmen Patros whom
I've known for 9 years.
She is the mother of 7 children
whom she has always cared
for and provided for her children,
though she became a single
parent she's done an outstanding
job with her children at home
residing are ages of 18, 16, & 14.
Carmen is a grandmother of two
ages 9 & 7.
I have been very impressed
with how well Carmen has raised
her children.
She also has done for my children
during my own financial crisis
She bought food for my children
and my self.

Carmen is a decent woman whom is always willing to help other in need.

She's a very humble person. I am aware that Carmen has currently been convicted of a serious crime however I know she is a good person as I've mentioned above, and is a positive person in my community.

I would like to close this letter by saying Thank you for considering my comments.

If I may be of further assistance, please feel free to contact me at.

Migdalia Perez ███████-5909

Thank You.

EXHIBIT D

To:     The honorable Jed S Rakoff
        United States District Court
        Southern District Court
        500 Pearl Street
        New York, New York 10007

Dear Judge
     My Name is Charmaine Pottinger
I reside at ▬▬▬▬▬ Ave Bridgeport
CT. I have Known Carmen for the Pass
15 years. We watched Each other Kids.
Carmen and I met in the area where
we both lived. She is a fun loving Person.
She also is very warm hearted. I relized
that She is in trouble, but I Still believe
she deserve a second chance. You wont
regret it if you find it in your heart
to Consider what I am Saying to Give
her another chance. My children are
my heart and carmen is the only person
I trust to watch them. She is Honest,
Caring and She is a very efficient person.
Please consider Carmen She is a Super mom
to my thids and her thids as well. We all
need her around to keep us Laughing.
If you need additional information I Can be
reached at ▬▬▬▬ 7876 Thank You for

reading my letter

Respectfully yours

Charmaine Pottinger

# EXHIBIT E

Dear Honorable Jed S. Rakoff

My name is Gina Santiago
The reason for my letter is regarding
my friend Carmen Patron I am
feeling very upset because I
understand she has made a
mistake but everyone deserves
another chanse I know Carmen
by my mom that is her friend
and I have to say she is a very
loving and caring person she has
helped us in alot of ways, she
will take the food out her mouth
to give it to someone else I
remember when my uncle passed
away Carmen was there for us.
And she is a wonderfull mother and
grandmother her kids are her life,
I trust her with my kids. I can
count on her, I will let my kid
with her with no worry. And I
know that my kids will be good
taken care of she makes sure
that my kids eat and are
cleand. And my kids love being

with her and is hard for my oldest son to stay with anyone, but as soon as I tell him that they are going to auntie carmen's house they love it.

I give you my word that if you give her a second chance you wouldn't have no regreats. The best thing is that she knows she made a mistake And that is something she regreats. I hope this letter touches your heart and give us all a secound chance because you will be doing a favor to alot of people. If you have any questions feel free to call me ████-6728

Thank You!

Nina Santiago

EXHIBIT F

Honorable Jed S. Rakoff

My name is Miriam Rojas

I am employed at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

My occupation is a school bus driver in ▓▓▓▓▓▓.

I am writing this letter concerning my sister Carmen Patron. I have become aware of my sister's criminal offence, and that she is currently waiting to be sentenced by you. Carmen, your honor realizes that she has committed a very serious crime, and could end up in jail for a long time. She knows that she is losing so much for something that wasn't worth it. She regrets it very much with all her heart. I myself your honor recognize the seriousness of the criminal offence, and we have to pay for our wrong doing. Your Honor I would like to express to you the kind of person that my sister Carmen is. She has a very loving and kind heart. She is a person that would do anyone a favor even if it means going out of her way. Carmen has been like a second mother to many people, including my own son and our 10 other siblings. She would bring them to her home and give them food and shelter. She is a very sensitive person.

I your honor ask you to please give my sister Carmen a Second Chance. I truly believe that she has learned her lesson, by worrying all these month, waiting for the outcome of all this, and the agony of leaving her children behind, Knowing that they are suffering also. Carmen is truly ashamed of her actions. She has never been in this kind of trouble before, and I truly don't think that it will ever be repeated in the future. Please your honor consider a compassionate sentence for Carmen, her children depend on her she means everything to them.

Respectfully,

Miriam Rojas . Miriam Rojas

Thank you very much your Honor for considering my comments. Any Questions please feel free to Contact me at:
_____8797 - Cell   Home- _____-9313
Adress: _____
_____

EXHIBIT G

DEAR HONORABLE JED S. RAKOFF,

My NAME IS EMILIO ROJAS AND I'M WRITTING YOU THIS LETTER REGARDING MY AUNT CARMEN PATRON I WOULD LIKE TO START BY TELLING YOU THAT CARMEN IS A BEAUTIFUL KIND AND CARING PERSON. SHE HAS BEEN THROUGH ALOT OF STRESS IN THE PAST AND UNFORTUNATELY IT DROVE HER INTO GETTING A DRUG HABIT. WHICH LED TO THIS PENDING CASE. I FEEL THAT THIS HAS BEEN A REAL EYE OPENER FOR HER AND SHE HAS REALIZED THE SERIOUSNESS OF HER ADDICTION AND OF THIS CASE. SHE IS AWARE AND FEARS GREATLY THE CONSEQUENCES OF HER BAD DECISIONS THAT MAY LEAVE HER KIDS OUT IN THE STREETS. THIS IS HER BIGGEST FEAR ASIDE FROM BEING INCARCERATED. I BELIEVE THAT HER KIDS ARE IN AN AGE WHERE THEY NEED HER THE MOST. AGAIN, CARMEN IS A KIND AND CARING PERSON AND I AM GREATFUL FOR HAVING HER IN MY LIFE. SHE IS LIKE A SECOND MOTHER TO ME. SHE HAS DONE SO MUCH FOR ME, IN MY TIME...

OF NEED. SHE HAS GIVEN ME SHELTER FOOD AND KNOWLEDGE TO HELP ME MOVE FORWARD IN LIFE. BECAUSE OF HER I WENT FROM BEING HUNGRY AND HOMELESS TO HAVING A JOB AND MY OWN PLACE WHERE MY KIDS COULD COME AND PLAY. I'M LIVING A BETTER LIFE TODAY AND I THANK HER FOR BEING THERE FOR ME.

I'M GLAD SHE REALIZED THAT DRUG ADDICTION, AND IS DOING HER BEST TO GET HER LIFE BACK TOGETHER, BY SEEKING HELP FOR HER RECOVERY. SHE IS CURRENTLY IN A DRUG PROGRAM AND SHE HAS BEEN TAKING IT VERY SERIOUSLY.

I THANK YOU FOR YOUR TIME YOUR HONOR AND I WOULD APPRECIATE IF YOU WOULD TAKE SOME OF THIS INTO CONSIDERATION ON THE TIME OF YOUR SENTENCING.

AGAIN THANK YOU FOR YOUR TIME AND CONSIDERATION YOUR HONOR.

SINCERELY,

Emilio Rojas

ANY QUESTIONS CALL ME
CELL # ████-8767